(No. 39387.—

THE PEOPLE OF THE STATE OF ILLINOIS *et al.,* Appellees,
*vs.* WILLIAM C. WITHERSPOON, Appellant.

*Opinion filed January 19, 1967.—Rehearing denied March 27, 1967.*

Ward, J., took no part.

Albert E. Jenner, Jr., Thomas P. Sullivan, Jerold S. Solovy, John C. Tucker, and Joseph A. Spitalli, all of Chicago, (Raymond, Mayer, Jenner & Block, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, and James B. Zagel, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

In April of 1960, a jury convicted the petitioner, William C. Witherspoon, of the murder of police officer Mitchell Stone, and fixed his penalty at death. The judgment was affirmed on writ of error. (*People* v. *Witherspoon*, (1963) 27 Ill.2d 483.) Thereafter the petitioner filed a petition for relief under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1963, chap. 38, pars. 826–832.) The trial court granted the State's motion to dismiss the petition on the ground that some of the claims asserted had been adjudicated and that others had been waived because they were not raised on the writ of error to review the judgment of conviction. In a memorandum opinion (No. 3559) this court denied writ of

error, deciding some of the claims asserted adversely to the petitioner and holding that others had either been adjudicated or waived.

The petitioner has also sought relief by way of Federal *habeas corpus*. In *United States ex rel. Witherspoon* v. *Ogilvie,* (7th cir. 1964) 337 F.2d 427, the court of appeals reversed a determination by a district judge that the petitioner was entitled to be resentenced after being given an opportunity to present evidence in mitigation. The court of appeals also considered other claims advanced by the petitioner, and ordered the *habeas corpus* petition dismissed. Thereafter another *habeas corpus* proceeding was instituted by the petitioner in the United States District Court. The district judge stayed proceedings in that court until remedies in the State courts had been exhausted.

The attorneys appointed by the district court to represent the petitioner in the *habeas corpus* proceeding then filed in the circuit court of Cook County a petition which requested that it be considered under whatever form of remedy is "provided for by Illinois law", suggesting a petition under the Post-Conviction Hearing Act, (Ill. Rev. Stat. 1965, chap. 38, pars. 122—1 to 122—7); *habeas corpus;* section 72 of the Civil Practice Act, (Ill. Rev. Stat. 1965, chap. 110, par. 72); a bill of review; a bill in the nature of a bill of review; *coram nobis; coram vobis; audita querela,* or any other appropriate remedy. After extended argument the trial judge dismissed the petition on his own motion on the ground that it failed to set forth facts sufficient to entitle the petitioner to relief. This appeal follows.

In his two prior appeals to this court and his appeal to the Court of Appeals for the Seventh Circuit numerous alleged trial errors have been considered. We need not now consider whether there may be situations in which a showing of innocence may be made by a defendant who has already resorted to direct and collateral review, as has the defendant in this case. (See *Anderson* v. *Gladden,* 234

Ore. 614, 383 P.2d 986, 991; *In re Sterling*, 63 Cal.2d 486, 407 P.2d 5, 7) Most of the petitioner's contentions have been raised previously and decided adversely, and the remaining contentions do not show any error that would affect the accuracy of the determination of the petitioner's guilt, or the fundamental fairness of his trial.

In his present petition the petitioner alleges, for the first time, that he was not advised of his right to remain silent or of his right to confer with counsel, and that his request to confer with counsel before making a statement was denied. In *Johnson* v. *New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, the Supreme Court held that the principles of *Escobedo* v. *Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, and the procedures required by *Miranda* v. *Arizona*, 384 U.S. 436, 16 L. Ed.2d 694, applied only prospectively. In *People* v. *McGuire*, 35 Ill.2d 219, *People* v. *Wallace*, 35 Ill.2d 251, and other cases, we have refused to apply those principles retroactively. Since this defendant was tried in 1960, *Escobedo* and *Miranda* do not apply.

The petitioner contends that the confession which was admitted in evidence against him was not voluntary. No such contention was advanced upon the direct review of the petitioner's conviction, which is reported in 27 Ill.2d 483. Such a claim was advanced in his first post-conviction petition, and in affirming the judgment dismissing that petition this court held that the contention had been waived. The petitioner now asserts that he did not knowingly waive this contention and did not authorize the attorney who represented him to do so, and he argues, therefore, that under the doctrine of *Fay* v. *Noia*, 372 U.S. 391, 9 L. Ed.2d 837, there was no effective waiver of this contention. The petitioner's present petition alleges with respect to the direct review of his conviction: "On one occasion, petitioner's court appointed counsel wrote petitioner a letter advising petitioner of the grounds which counsel intended to raise on the appeal, but counsel did not offer or permit petitioner

to determine what should be argued and what should not be argued on the appeal."

This allegation is hardly consistent with the petitioner's assertion that there was no knowing waiver upon direct review. In any event, the contention that his confession was coerced was advanced in his petition for *habeas corpus* in the Federal court. Upon appeal in that case, the Court of Appeals pointed out that a full hearing had been held upon the petitioner's motion to suppress prior to the trial, and that the trial court had found the confession to have been voluntary. The Court of Appeals then held that the District Court was not required to conduct an evidentiary hearing, and stated that "the record fairly supports the state factual determination." 337 F.2d at 430; *cert.* den. 379 U.S. 950.

Petitioner contends, for the first time, that the disqualification for cause of jurors having scruples against capital punishment violated his right to a trial by a jury which was fairly representative of a cross section of the community, and subjected him to trial by a jury which favored the prosecution in deciding the issue of guilt or innocence. Prospective jurors at petitioner's trial were asked: "Do you have any conscientious scruples or any religious scruples against the infliction of the death penalty in a proper case?" And other prospective jurors were asked: "Now, if you're selected as one of the twelve jurors and it should be your opinion, along with the other eleven jurors, after having heard all the evidence and the rules of law given by His Honor and you're back in the jury room, it should be your opinion, along with the other eleven, that the defendant is guilty, and the next part of your deliberation is to fix a penalty, and when you're at the penalty part of the deliberations it should be your opinion, along with the other eleven jurors, that the proper verdict in this case is that of death in the chair, based on the evidence as you have heard it here and the rules of law given by his Honor, would you so say by signing a guilty verdict?"

Petitioner's contentions in this respect are foreclosed by our opinion in *People* v. *Hobbs,* 35 Ill.2d 263. *Hobbs* states that a defendant's right to trial before a jury which is a cross section of the community does not include the "right to have some individuals on the jury who may be prejudiced in his favor, someone who is unalterably opposed to one of the possible penalties with which he is faced." (35 Ill.2d at 272). *Hobbs* also answers the petitioner's contention that a death-qualified jury is likely to favor the prosecution on the issue of guilt or innocence. In *Hobbs* the court quoted the following language from *Turberville* v. *United States,* 112 App. D.C. 400, 303 F.2d 411, (*cert.* denied 370 U.S. 946, 8 L. Ed.2d 813, 82 S. Ct. 1596) : "Being not opposed to capital punishment is not synonymous with favoring it. Individuals may indeed be so prejudiced in respect to serious crimes that they cannot be impartial arbiters, but that extreme is not indicated by mere lack of opposition to capital punishment." (35 Ill.2d at 273.)

Nor are we persuaded to disallow challenges based on scruples because a study cited in the petitioner's brief indicates that some jurors qualified for the death penalty tend to favor the prosecution, or, as it is said, to be "prosecution prone." Since the same study indicates that jurors with scruples against the death penalty could be characterized as "defense prone", it is appropriate to continue to allow each side to challenge jurors for cause, and we adhere to the system in which each side is allowed to examine jurors and eliminate those who can not be impartial.

Petitioner contends, for the first time, that he was not afforded a hearing to determine his mental capacity to stand trial. His petition alleges that "facts were called to the attention of the trial judge which gave rise to a reasonable issue as to petitioner's mental capacity to stand trial. The obligation thereupon devolved upon the trial judge to hold an inquiry into that issue." The facts referred to are not stated, however. Upon these allegations we are unable

to say that the trial judge erred in failing to hold a hearing. And any doubt concerning petitioner's mental capacity to stand trial is dispelled by the fact that he was examined by the Behavior Clinic of the Criminal Court of Cook County, which reported that "psychological examination revealed an I.Q. of 111, indicating bright normal intelligence", and that "he knows the nature of the charge and is able to co-operate with his counsel."

Petitioner also objects that at the hearing on the present petition his attorney was not allowed to question the clerk of the court about his certification that the Clinic's report was filed on February 10, 1960. We can not say that denial of such an examination was error. The Clinic's report and an accompanying letter of transmittal from the examining physician to the trial judge indicate that the examination was reported to the trial court on February 10, 1960. The issue upon which the petitioner sought to question the clerk was whether or not these documents were stamped by the clerk of the court as filed on February 10, 1960, or at a later date. That issue was not significant. The petitioner did not allege that no examination was conducted.

The petitioner argues that he should have been allowed to introduce newly discovered evidence at the hearing below. He there alleged that since May of 1963 "* * * petitioner has discovered the existence of additional evidence to support his contention that his confession and admissions were not voluntary, but rather were the result of physical and mental coercion brought to bear on petitioner by the police. Petitioner requests an opportunity to introduce the testimony of a witness who observed petitioner when he was in the police station, and who can testify to petitioner's physical condition at that time."

We have held that "Applications for new trials on the ground of newly discovered evidence are not regarded with favor and must be closely scrutinized. In order to justify a new trial the newly discovered testimony must be con-

clusive and not merely cumulative, and the evidence must appear to be of such conclusive character that it will probably change the result if a new trial is granted." (*People* v. *Dukes,* 19 Ill.2d 532, 538–39.) Prior to trial the petitioner was afforded a hearing on his motion to suppress his confession as involuntary. Several hundred pages of the record are devoted to testimony concerning petitioner's condition and treatment during and prior to the time he made his statement. The allegations of newly discovered evidence tell nothing about the evidence, and do not suggest that it will be "conclusive and not merely cumulative" or that "it will probably change the result if a new trial is granted." The petition did not justify the request for leave to offer additional testimony.

The judgment of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order fixing Friday, April 21, 1967, as the date on which the original sentence of the criminal court of Cook County shall be executed. A certified copy of the order shall be furnished by the clerk of this court to the Sheriff of Cook County.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.